UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**EARNEST L. JOHNSON, JR.,**

      Plaintiff,

      v.                                      Case No. 16-CV-592

**WISCONSIN CORRECTIONAL CENTER SYSTEM,**
**DR. EUGENE BURKE,**
**AURORA HEALTH CARE,**
**DR. JOHN DOE,**
**DR. JEFFREY B. SHOVERS,**
**SGT. STEVEN JANUS,**
**STATE OF WISCONSIN CORRECTIONALS,**
**TANYA CHIAPUSIO, and**
**MARIA BEG,**

      Defendants.

---

## DECISION AND ORDER

Plaintiff, Earnest Johnson, filed an action under 42 U.S.C. § 1983, alleging that defendants violated his civil rights. This matter comes before me on plaintiff's second motion to change payment from $350 to $304.12 (ECF No. 14), plaintiff's third motion for appointment of counsel (ECF No. 15), and for screening of the amended complaint (ECF No. 16).

### "Motion to Pay $350"

The Prison Litigation Reform Act ("PLRA") allows inmates to proceed with their lawsuits in federal court without pre-paying the $350 filing fee. 28 U.S.C. § 1915. However, this right is only available to a petitioner who is "unable to pay such fees or give security therefor." § 1915(a)(1). Plaintiff was able to pay the full filing fee at the time the lawsuit was filed, and he in fact paid the amount. Therefore, his second motion to change payment $350 to $304.14 (ECF No. 14) will be denied.

## Screening of the Amended Complaint

The PLRA requires me to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss an action or portion thereof if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim under the federal notice pleading system, plaintiffs must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

The factual content of the complaint must allow me to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Indeed, allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

I follow the two step analysis set forth in *Twombly* to determine whether a complaint states a claim. *Iqbal*, 556 U.S. at 679. First, I determine whether the plaintiff's legal conclusions are supported by factual allegations. *Id.* Legal conclusions not

supported by facts "are not entitled to the assumption of truth." *Id.* Second, I determine whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* Pro se allegations, "however inartfully pleaded," are given a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## **Factual Allegations**

Plaintiff's amended complaint is confusing and a bit difficult to understand. Plaintiff appears to allege that sometime in 2007, he was injured and was placed in the ICU. (ECF No. 16 at 3). During this time, defendant, Dr. Maria Beg, prescribed him "blood thinners for life." (*Id.*). About eight months later, plaintiff required knee surgery and Beg took plaintiff off of the blood thinners in preparation for the surgery. (*Id.*). Plaintiff states that Beg should have placed him back on the blood thinners after the surgery. (*Id.*). She failed to do so, and this failure has caused plaintiff to develop very painful blood clots in his leg. (*Id.* at 3, 5).

Defendant, Dr. Jeffrey Shovers, was the individual who conducted plaintiff's knee surgery. (*Id.* at 3). Plaintiff states that the knee surgery caused knee swelling and popping that did not exist prior to surgery. (*Id.* at 3). Plaintiff notified Shovers about his knee troubles. (*Id.*). He also notified Shovers that he was suffering substantial leg pain likely caused by blood clots that developed after being taken off of the blood thinners. (*Id.*). Shovers examined plaintiff post-operation and indicated that he might have "left something in" plaintiff's knee and that "he will have to go back in there." (*Id.* at 3–4). Shovers did not go back to do another surgery on plaintiff's knee, and he also did not place plaintiff back on blood thinners to alleviate his leg pain. (*Id.*)

3

Plaintiff notified Nurse Tanya Chiapusio about leg pain likely caused by blood clots that developed after being taken off of the blood thinners. (*Id.* at 4.). By this time, plaintiff also suffered "internal bleeding" from being taken off of the blood thinners. (*Id.*). Chiapusio also refused to place plaintiff back on the blood thinners. (*Id.*). Instead, she accused plaintiff of having leg pain because he was not taking Warfarin, the medicine he was prescribed after his knee surgery. (*Id.*).

Sometime later, plaintiff was transferred to Chippewa Valley Correctional Center where he was given an ultrasound and was indeed diagnosed with "new and old blood clots" in his leg. (*Id.* at 4-5). Plaintiff was put back on blood thinners at this time to help with the blood clots. (*Id.*) Plaintiff was then transferred to Kenosha Correctional Center where Dr. Eugene Burke took the plaintiff off of the blood thinners because plaintiff was still taking Warfarin. (*Id.* at 5). Burke also stated that there was no paperwork that indicated that plaintiff had blood clots. (*Id.*).

Plaintiff continued to complain to Burke about severe pain in his leg and Burke continued to deny plaintiff's request for medication. (*Id.*). Eventually, Chiapuso provided plaintiff with an ill-fitted knee brace to ease his leg pain. (*Id.*). Plaintiff has been "walking around with old and new blood clots for five years" and is still in severe pain. (*Id.*). He also still needs surgery to fix his knee. (*Id.* at 6).

For relief, he seeks monetary damages, costs associated with his medical care, and surgery and medication to fix his knee and leg pain. (*Id.* at 11).

## Legal Analysis

To state a claim for relief under 42 U.S.C. § 1983, plaintiff must allege that defendants (1) deprived him of a right secured by the Constitution or laws of the United

States and (2) acted under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Liability for an individual under §1983 is based on that individual's personal involvement in the constitutional violation. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Liability for a private corporation under § 1983 is based on that entity's official corporate policy that caused a constitutional deprivation. *See Woodward v. Correctional Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).

The Wisconsin Department of Corrections is not "person" within the meaning of § 1983. *Id.* Therefore, plaintiff may not proceed with his claims against "Wisconsin Correctional Center System" and "State of Wisconsin Correctionals." Accordingly, both will be dismissed from the action.

Similarly, plaintiff does not allege any personal involvement of a "Dr. John Doe" or Sgt. Janus. In fact, neither individual is mentioned anywhere in the complaint except the caption. Therefore, Dr. John Doe and Sgt. Janus are also dismissed from the action.

Finally, plaintiff does not allege an official corporate policy of Aurora Health Care that caused a constitutional violation. It is unclear how Aurora Health Care is even involved in the matter. Therefore, Aurora Health Care is also dismissed from the action.

However, plaintiff has stated potential Eighth Amendment claims against defendants Beg, Shovers, Chiapusio, and Burke. To assert an Eighth Amendment claim, plaintiff must allege that jail officials acted with "deliberately indifference" to a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 829, 834 (1994). Jail officials act with deliberate indifference when they know of a

5

substantial risk of serious harm and either act or fail to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Inmates have a "serious harm" if the inmate's condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.*

Plaintiff alleges that he notified Beg, Shovers, Chiapusio, and Burke about his need for blood thinners and they have refused to refill the prescription after his knee surgery notwithstanding their knowledge that plaintiff previously had a "life time" prescription for this medication. As a result of their refusal to refill the prescription, plaintiff developed and was diagnosed with many "old and new" blood clots that has caused severe pain for almost five years. At this point in the litigation, these allegations are sufficient to state an Eighth Amendment claim.

Plaintiff also asserts a "medical malpractice claim of misdiagnosis of blood clot." (ECF No. 16 at 1, 3). Federal courts are courts of limited jurisdiction that can only assert original jurisdiction where the controversy is between citizens of different states or where the controversy implicates a federal question. 28 U.S.C. §§ 1331–1332(a)(1). Federal courts *can* assert supplemental jurisdiction where the state claims are so related to claims within the court's original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Because plaintiff's stated cause of action for medical malpractice derives from a common nucleus of operative facts from his Eighth Amendment deliberate indifference claim, he may proceed with his state law claims at this point in the litigation.

## Motion to Appoint Counsel

I have discretion to recruit counsel for litigants unable to afford one in a civil case. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). However, litigants must first show me that they have made reasonable attempts to secure private counsel on their own. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). Once the litigant makes that attempt, I then decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (citing *Pruitt*, 503 F.3d at 655). I look not only at the plaintiff's ability to try his case but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." *Id.*

Plaintiff satisfied his burden to make reasonable attempts to hire private counsel on his own, s*ee* ECF No. 16-1, but I will not appoint counsel at this time. At this point in the litigation, all plaintiff has to do is wait for the defendants to answer. If and when defendants file an answer to plaintiff's amended complaint, I will issue a scheduling order with further instructions on how to proceed with the case. Plaintiff will be able to ask defendants to answer his interrogatories regarding the alleged events (Fed. R. Civ. Pro. 33), and he will be able to conduct discovery regarding any reports or records that resulted from the alleged events (Fed. R. Civ. Pro. 34). He also will be able to present his version of events, through an affidavit or unsworn declaration under 28 U.S.C. § 1746, in response to any motion for summary judgment that defendants might file. I have no evidence before me right now to indicate that plaintiff cannot handle these tasks on his own. Therefore, I will deny his motion to appoint counsel without prejudice.

7

## ORDER

**IT IS THEREFORE ORDERED** that:

(1)     Plaintiff's motion to pay $350 (ECF No. 14) is **DENIED**, and

(2)     Plaintiff's third motion for appointment of counsel (ECF No. 15) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Wisconsin Correctional Center System, Aurora Health Care, Dr. John Doe, Sgt Steven Janus, and State of Wisconsin Correctionals are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Dr. Eugene Burke, Dr. Jeffrey B. Shovers, Tanya Chiapusio, and Maria Beg.

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, Dr. Eugene Burke, Dr. Jeffrey B. Shovers, Tanya Chiapusio, and Maria Beg shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that plaintiff shall submit all correspondence and legal material to:

>   Office of the Clerk
>   United States District Court
>   Eastern District of Wisconsin
>   362 United States Courthouse
>   517 E. Wisconsin Avenue
>   Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, plaintiff need not mail copies to defendants. All defendants will be served electronically through the court's electronic case filing system. Plaintiff should also retain a personal copy of each document filed with the court.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 10th day of August, 2016.

                                      s/ Lynn Adelman

                                      _____
                                      LYNN ADELMAN
                                      District Judge